Hernández Torres, Jueza Ponente
TEXTO COMPLETO DE LA RESOLUCIÓN
Comparecen ante nos Nelson Iván Burgos Suárez, et ais., parte aquí demandada-peticionaria (los "peticionarios"), y nos solicitan que revoquemos la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao (el "TPI"), el 28 de octubre de 2004, notificada y archivada en autos el 24 de noviembre de 2004, en el caso Civil Núm. HPE1999-0052, sobre: injunction. Por razón de su determinación, el TPI declaró No Ha Lugar la Solicitud de Relevo de Resolución de 23 de diciembre de 2003, Notificada el 30 de diciembre de 2003, presentada por los peticionarios el 13 de abril de 2004.
Luego de estudiados los hechos y el derecho aplicable, se deniega la expedición del auto de certiorari.
I
El 16 de marzo de 1999, la demandante-recurrida Administración de Reglamentos y Permisos (la "ARPE" o "recurrida") radicó Demanda sobre injunction contra los peticionarios, al amparo del procedimiento especial tipificado en el Art. 28 de la Ley Número 76 de 24 de junio de 1975 (la "Ley Núm. 76"), 23 L.P.R.A. § 72. En esencia, en la referida demanda, ARPE formuló las siguientes alegaciones:

“4. Los Co-Demandados Nelson Iván Burgos Suárez y Melba Iris Nieves Aponte [(los peticionarios)] son además dueños de la estructura de dos pisos en hormigón armado usado como el Real Palmas Night Club localizados en el Solar. Y son dueños de la estructura con rótulo de Hotel Real también ubicada en dicho solar. (Añadido nuestro.)

5. Los Co-Demandados, sin haberse provisto de los correspondientes permisos de Construcción y Permiso de Planificación de Puerto Rico, construyeron y/o permitieron que se construyera, y/o mantienen o permiten que mantengan, se usen u operen la siguiente estructura y los siguientes usos en la propiedad sita en la

*1120 Carretera Estatal Número 3, Kilómetro 63.7, Barrio Santiago y Lima, Naguabo, Puerto Rico.

a. Se realizó ampliación de hotel sin permiso de construcción en primera planta de 12'-3” x 34'-4” en bloque y hormigón, que constituye una marquesina.

b. Uso de estructura de 12'-3” x 34'-4” como parte del Hotel sin el correspondiente permiso de Construcción de la ARPE.

c. Se realizó ampliación del Hotel en segunda planta de 34 '-2 ” x 33 '-4 ” sin el correspondiente permiso de Construcción de la ARPE.

d. Se usa estructura o ampliación en segunda planta de 34 '-2” x 33 '-4” como Hotel sin el correspondiente permiso de uso. (Escrito de Certiorari, Apéndice Núm. 2, a las págs. 14-15.)”

La propiedad de los peticionarios, a la cual se hace referencia en la Demanda de injunction, está ubicada en la Carretera Estatal Número 3, Kilómetro 63.7, Barrio Santiago y Lima del Municipio de Naguabo. A la fecha de la radicación del pleito enclavaban sobre la propiedad dos estructuras; a saber: (1) un club nocturno, y (2) una hospedería o "guest house", conocidas colectivamente como Hotel Real Palmas. En aquel entonces, el "guest house" consistía de una estructura con dos plantas: 8 habitaciones en los altos y 6 marquesinas abiertas en los bajos. (Escrito de Certiorari, a la pág. 2.) Por razón de su recurso, ARPE solicitó al TPI que ordenase a los peticionarios: 1) desistir de usar o mantener los usos identificados en la Demanda para los que no tengan permiso de uso; 2) a remover, demoler o eliminar por su cuenta y riesgo las obras y estructuras descritas, para las que no tengan permiso de construcción; y 3) al pago de costas y honorarios, por la suma de dos mil quinientos dólares ($2,500). (Escrito de Certiorari, Apéndice Núm. 2, a la pág. 15.)
Luego de otros trámites procesales, entre los que se registró y más tarde se dejó sin efecto una anotación de rebeldía contra los aquí peticionarios, el 5 de octubre de 1999, éstos radicaron Contestación, por la cual aceptaron todas las alegaciones de la Demanda y argüyeron haber comenzado las gestiones necesarias en ARPE para legalizar las construcciones objeto de la controversia. (Escrito de Certiorari, Apéndice Núm. 8, a la pág. 22.)
Así las cosas, el 9 de noviembre de 1999, conforme a lo ordenado por el TPI, ARPE compareció para expresarse en relación a la Contestación de los peticionarios y sostuvo que la presentación del anteproyecto número 99-58-D-080-HPA en esa agencia no implicaba que el mismo sería autorizado, ni constituia un permiso de construcción, por lo que procedía continuarse con los trámites en el caso de autos. (Escrito de Certiorari, Apéndice Núm. 10 a la pág. 24.)
Señalada vista para juicio en su fondo, el 24 de noviembre de 1999, el TPI tomó conocimiento de que los peticionarios habían radicado un anteproyecto en ARPE, procedimiento que resultó denegado por la agencia. Habiéndose orientado a los peticionarios de que les correspondía radicar una consulta de ubicación ante la Junta de Planificación y solicitada que fuera por ARPE la paralización de los procedimientos, el TPI dejó sin efecto el señalamiento de juicio, apercibiendo a los peticionarios que debían presentar, ante el Tribunal y ARPE, acreditación del trámite ante la Junta de Planificación, lo cual, de ser resuelto, conllevaría el archivo administrativo del caso. (Escrito de Certiorari, Apéndice Núm. 11, a la pág. 26.)
El 3 de agosto de 2003, en vista de que no se había efectuado trámite alguno durante los últimos seis (6) meses, el TPI ordenó a las partes exponer, dentro de determinado plazo, las razones por las cuales no se debía desestimar el caso de autos. Transcurrido el término, las partes no comparecieron para justificar la inactividad en el pleito, por lo que, el 20 de septiembre de 2000, notificada el 25 de ese mes y año, el TPI emitió Sentencia por la cual desestimó el caso, en virtud de lo dispuesto en la Regla 39.2(b) de Procedimiento Civil. (Escrito de *1121 Certiorari, Apéndices Núm. 12-13, a las págs. 228-31.)
En consideración a lo anterior, el 10 de octubre de 2000, ARPE presentó reconsideración de la anterior sentencia, mediante Moción al Amparo de la Regla 49.2 y Otros Extremos, alegando que los procedimientos se habían detenido hasta que los peticionarios informaran los trámites de la consulta de ubicación ante la Junta de Planificación, gestiones que nunca se realizaron. Presentada por los peticionarios una Oposición a Moción de Reapertura, el 8 de marzo de 2001, el TPI declaró No Ha Lugar la moción de relevo de sentencia presentada por ARPE. Sin embargo, el 9 de mayo de 2001, en consideración a Moción de Reconsideración de ARPE y la Oposición a Moción de Reconsideración de los peticionarios, el TPI declaró Ha Lugar el relevo de la Sentencia de 20 de septiembre de 2000, por lo que reabrió el pleito y señaló vista para la continuación de los procedimientos. (Escrito de Certiorari, Apéndices Núm. 15-24, a las págs. 26- 60,)
El 6 de julio de 2001, los peticionarios radicaron Moción de Paralización de los Procedimientos, por la que informaron al TPI de la presentación de una consulta de ubicación para proyecto de parador de 50 habitaciones ante la Junta de Planificación, caso número 2001-52-02660JPU, y solicitaron se suspendieran los trámites judiciales hasta agotar los procedimientos administrativos. (.Escrito de Certiorari, Apéndice Núm. 25, a las págs. 61-64. De otra parte, mediante Moción Solicitando Intervención, el 10 de julio de 2001, la Asociación de Moteles de Puerto Rico (la "Amoprico" o "interventora") alegó tener un interés legítimo en el procedimiento, el cual podría verse afectado por las determinaciones del tribunal, razón por la que solicitó intervenir en el pleito. (Escrito de Certiorari, Apéndice Núm. 27, a las págs. 67.-69.)
Atendidas dichas mociones durante la vista celebrada el 12 de julio de 2001, mediante Resolución y Orden de 24 de julio de 2001, notificada a las partes el 21 de agosto de ese año, el TPI declaró Con Lugar la solicitud de intervención de Amoprico y No Ha Lugar a la moción de paralización de los procedimientos presentada por los peticionarios. {Escrito de Certiorari, Apéndice Núm. 29, a las págs. 71-75.) Mediante su dictamen, determinó el TPI que procedía el injunction a tenor con el Art. 28 de la Ley Núm. 76, en virtud del "incuestionable hecho de que la [parte peticionaria] quien se dedica y explota una actividad de motel, carece de los permisos de uso necesarios [y] han venido realizando mejoras a la estructura sin los permisos correspondientes de la ARPE". {Escrito de Certiorari, Apéndice Núm. 29, a las págs. 73-74.) Así pues, en lo pertinente, ordenó el TPI a los peticionarios que, con carácter provisional:
“SUJETO A DESACATO, que de inmediato, sin excusa, ni pretexto, los [peticionarios], SR. NELSON BURGOS SUAREZ y/o la SRA. MELBA IRIS NIEVES APONTE y la Sociedad Legal de Gananciales y/o cualquier tercero, detengan TODA actividad comercial de motel d/b/a Hotel Real y/o Real Palmas Night Club, y de construcción y/o reconstrucción sita en Carretera número 3, kilómetro 63.7 del Barrio Santiago y Lima de Naguabo Puerto Rico. ” (Añadido nuestro.) (Enfasis en el original.) Escrito de Certiorari, Apéndice Núm. 29, a las págs. 74-75.)
De otra parte, concurrentemente con el proceso ante el TPI, el 27 de junio de 2001, notificada el 14 de agosto de ese año, la Junta de Planificación emitió Resolución por la cual autorizó el proyecto turístico que ampliaría el "Guest House" Real Palmas y Salón de Actividades, para construir un Parador con capacidad de cincuenta (50) habitaciones y facilidades recreativas. Al aprobar la consulta de ubicación, la agencia acordó:
“[Q]ue es viable el desarrollo de los terrenos [de los peticionarios] para el uso propuesto, condicionado a I [determinados] señalamientos y recomendaciones, los cuales habrán de tomarse en consideración al prepararse y someterse en la próxima etapa en el trámite del proyecto, etapa que será determinada por [ARPE]. ” (Énfasis suplido.)
En vista de lo anterior, el 24 de agosto de 2001, los peticionarios radicaron Moción Para Que Se Deje Sin Efecto Resolución y Orden Emitida el 24 de Julio de 2001. Éstos alegaron que la determinación del TPI tuvo el *1122 efecto de ordenar el cierre del "night club Real Palmas", para el cual tenían vigentes todos los permisos y patentes municipales requeridos, lo cual sustentaron mediante la presentación de dichos documentos. Argumentando su cumplimiento de la ley, los peticionarios acompañaron su moción con copia de la Resolución de la Junta de Planificación, solicitando así se dejara sin efecto la Resolución y Orden del 24 de julio de 2001. (.Escrito de Certiorari, Apéndice Núm. 31, a las págs. 78-95.) No obstante, el 30 de agosto de 2001, notificada el 4 de septiembre de ese año, el TPI declaró No Ha Lugar dicha moción. (.Escrito de Certiorari, Apéndice Núm. 32, a las págs. 96-97.)
Celebrado el juicio en 6 de septiembre de 2001, el TPI dictó Sentencia, de 18 de octubre de 2001 y archivada en autos su notificación el 13 de noviembre de 2001, en la que concluyó que los peticionarios en efecto poseían ciertos permisos de uso, a saber: permiso de uso de "guest house" y "night club"’, y poseían además, solicitud de permiso de uso y construcción, número 01AX2-00000-03885, radicado en ARPE el 5 de septiembre de 2001. Así pues, hecha la advertencia al peticionario de que el operar un uso distinto al autorizado por ARPE y contrario a lo encomendado sería causa suficiente para encontrarle incurso en desacato, el TPI dispuso:

“La estructura... en la cual el [peticionario] tiene su residencia en el segundo nivel, podrá seguir utilizando dicha residencia como su residencia habitual; el primer nivel para el cual tiene permiso de uso como club nocturno, podrá utilizar como tal la porción del mismo que no fue alterada y convertida en habitaciones.

La estructura... que se compone de ocho habitaciones en el segundo nivel y seis marquesinas en el primer nivel, podrá utilizarse única y exclusivamente para los fines a lo que la autorizó la A.R.P.E.; es decir, casa de huéspedes; el resto de las construcciones que no están identificadas en esta sentencia no podrán ser utilizadas hasta tanto [los peticionarios] obtengan el correspondiente permiso de uso y construcción de la A. R.P.E.” {Escrito de Certiorari, Apéndice Núm. 34, a las págs. 101-159.)
El 13 de diciembre de 2001, al amparo de la consulta de ubicación ante la Junta de Planificación, ARPE autorizó el anteproyecto para la ampliación del hotel conocido por Hotel Real Palmas, número de radicación 01AX2-00000-3885. {Escrito de Certiorari, Apéndice Núm. 48, a la pág. 238.)
Así las cosas, el 16 de septiembre de 2002, ARPE y la parte interventora radicaron ante el TPI una Moción de Desacato, en la que alegaron que los aquí peticionarios, en abierta violación a la Sentencia de 18 de octubre de 2001, continuaban realizando operaciones de motel sin haber efectuado las gestiones suficientes para legalizar el mismo; por lo cual solicitaron se señalara vista al efecto. {Escrito de Certiorari, Apéndice Núm. 35, a las págs. 160-167.) En virtud de lo anterior, el 3 de octubre de 2002 fue archivada en autos orden y mandamiento, requiriendo el cese inmediato de un alegado uso de motel, y citación. {Escrito de Certiorari, Apéndice Núms. 36-37, a la págs. 162-167.) Señalado el caso para vista de desacato, el 6 de diciembre de 2002, el peticionario se allanó a dichas alegaciones, ante lo cual, hecha la advertencia de que no se podría operar el negocio so pena de exponerse a ser arrestado, el TPI ratificó un acuerdo entre las partes, por el cual se concedió un término (hasta la vista del 31 de enero de 2003) para que se completaran las gestiones de permisos de construcción. {Escrito de Certiorari, Apéndice Núm. 38, a la pág. 168.) En 30 de junio de 2003, fecha a la que fue pospuesta la vista de solicitud de desacato, ante su incumplimiento con lo ordenado, la parte peticionaria se comprometió a cerrar operaciones. Conforme, el TPI concedió una multa de quinientos dólares ($500) a favor de ARPE, señaló vista de seguimiento y, a solicitud de Amoprico, advirtió que se impondría una sanción diaria de cien dólares ($100) de demostrarse que el negocio se estaba operando. {Escrito de Certiorari, Apéndice Núm. 44, a la pág. 185.)
El 20 de noviembre de 2003, ARPE concedió el permiso de uso del Hotel Real Palmas para 20 habitaciones. En el permiso se certificó que la construcción dichas habitaciones fue inspeccionada y que la misma se construyó conforme a los planos aprobados y al permiso de construcción número 03CX2-CET00- *1123 03811. (Escrito de Certiorari, Apéndice Núm. 48, a la pág. 241.) Sin embargo, durante la vista de seguimiento por desacato, celebrada el 1ro de diciembre de 2003, ante el incumplimiento del peticionario, ARPE informó que las partes habían llegado al siguiente acuerdó:

“1. La parte [peticionaria] se allana al pago de una multa de $200.00 en el término de quince días, por el incumplimiento con la Orden de paralización permanente de ARPE.

2. Pagará también a ARPE $500.00 por honorarios de abogado a favor de la parte interventora (AMOPRICO).

3. Dicha estructura no operará como MOTEL, por lo que solicitarán la enmienda al permiso de construcción para cerrar las marquesinas, las cuales serán convertidas en salas, una por cada apartamento. ” (Escrito de Certiorari, Apéndice Núm. 45, a las págs. 186-187.)
Hecho constar en la Minuta de la vista la anuencia de las partes con el acuerdo manifestado y la fecha señalada para la vista de seguimiento, el 23 de diciembre de 2003, notificada el 30 de ese mes y año, el TPI emitió Resolución por la que le impartió su aprobación. (Escrito de Certiorari, Apéndice Núm. 46, a las págs. 188-191.) Empece a este acuerdo, el 24 de marzo de 2004, durante la vista de seguimiento tanto ARPE como la parte interventora alegaron una ves más el incumplimiento del peticionario para con las órdenes del Tribunal.
Concedido un plazo solicitado por el peticionario, eí 13 de abril de 2004, éste presentó ante el TPI Solicitud de Relevo de Resolución de 23 de diciembre de 2003, Notificada en 30 de diciembre de 2003. Argüyó la parte que ARPE y Amoprico, "de manera contumaz" indujeron a error al TPI, con la pretensión de que el Tribunal asumiera jurisdicción primaria e interpretara conceptos reglamentarios, tarea que concierne únicamente a dicha agencia. Además, sostuvo que estas partes "obligan[ron] así con la desinformación a este Honorable Tribunal, a aceptar una estipulación contraria a derecho, y a la parte [peticionaria] a entrar en ésta, violando así los más elementales principios del debido proceso de Ley". (Escrito de Certiorari, Apéndice Núm. 48, a las págs. 194-250.) En virtud de ello, el 29 de abril de 2004, el TPI dictó Resolución ordenando a ARPE y Amoprico a expresarse en tomo a la petición de relevo de resolución. En cumplimiento con lo anterior, ambas recurridas presentaron sus posturas. (Escrito de Certiorari, Apéndices Núms. .50-51, a las págs. 253-265.) Finalmente, el 28 de octubre de 2004, el TPI dictó Resolución objeto del presente recurso, archivada en autos el 24 de noviembre de 2004, mediante la cual declaró No Ha Lugar la solicitud de relevo. (Escrito de Certiorari, Apéndice Núm. 1, a las págs. 1-13.)
Inconforme con la determinación del TPI, la parte peticionaria acudió ante nosotros, el 27 de diciembre de 2004, mediante escrito de Certiorari, señalando que:

“1. Erró el TI al utilizar el mecanismo sumario interdictal del Artículo 28, supra, para decretar la nulidad de los permisos de uso concedidos; en la alternativa al decretar la violación de los mismos cuando dicha autoridad recae deforma exclusiva en la jurisdicción y función adjudicativa de ARPE.

2. Erró el Honorable TI al denegar la moción de relevo de una sentencia de la cual usurpó la jurisdicción del foro administrativo y sustituyó el criterio de la agencia por el suyo propio.

3. Erró el Honorable TI al imputar a la operación de los peticionarios condición de motel y no de hotel, cuando en la ley no existe tal distinción, menoscabando de esta forma el derecho constitucional de propiedad y del debido proceso de ley de los peticionarios.

4. Erró el Tribunal al no aplicar la doctrina de agotamiento del remedio administrativo.

*1124
5. Erró el Honorable TI al declarar no ha lugar la moción de relevo de resolución utilizando como base una transacción que resulta ser nula ab initio en virtud de la falta de jurisdicción del foro judicial. ”

Luego de estudiar el expediente ante nuestra consideración, así como el derecho aplicable, estamos en posición de resolver.
II
A. Doctrinas de jurisdicción primaria y de agotamiento de remedios administrativos.
Conforme lo dispuesto por nuestro más alto foro, las doctrinas de agotamiento de remedios administrativos y de jurisdicción primaria son normas de elaboración jurisprudencial que “tienen el fin común de coordinar y armonizar la labor adjudicativa de los foros administrativos y los judiciales’’. Guzmán y otros v. E.L.A., Op. de 7 de mayo de 2002, 2002 J.T.S. 65, a la pág. 1062. Con ese propósito, ambas “están dirigidas a promover una relación armónica entre los tribunales y las agencias encargadas de administrar disposiciones reglamentarias”. Guzmán y otros, 2002 J.T.S. 65, a la pág. 1062.
La doctrina de jurisdicción primaria tiene dos (2) vertientes: 1) la jurisdicción primaria exclusiva, es decir, cuando una ley dispone que el organismo administrativo será el único que tendrá jurisdicción inicial para examinar la reclamación; y 2) la jurisdicción primaria concurrente, cuando se permite que la reclamación se inicie tanto en el foro administrativo como en el judicial. Aguilú Delgado v. P.R. Parking System, 122 D.P.R. 261, 266 (1988).
El propósito de esta norma es guiar a los tribunales para determinar si la cuestión de hecho a ser considerada requiere el ejercicio de la discreción administrativa o la aplicación del conocimiento especializado que la agencia posee. Asoc. Pescadores Pta. Figueras v. Pto. del Rey, Inc., Op. de 18 de diciembre de 2001, 2002 J.T.S. 4, a las págs. 581-582; Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 354 (1988). Entre las razones que se han invocado para justificar dicha deferencia a las agencias administrativas, están: 1) la destreza o pericia de la agencia; 2) la prontitud usual del proceso de decisión; 3) el uso de técnicas de adjudicación más flexibles. Ferrer v. Figueroa, 109 D.P.R. 398, 402 (1980). Sin embargo, una vez se ha optado por tramitar la querella en la esfera administrativa, la acción judicial directa queda postergada hasta finalizado dicho trámite. Cervecería India, Inc. v. Tribunal Superior, 103 D.P.R. 686, 691-692 (1975).
Es decir, la doctrina de jurisdicción primaria concurrente guía al foro judicial, el cual podrá optar por no ejercer su jurisdicción, si: 1) no se ha iniciado un procedimiento administrativo; y 2) la agencia con competencia sobre la materia posee destrezas o conocimientos especializados que le permitan entender la controversia de manera más apropiada. En términos prácticos, cuando lo que se plantee sea una cuestión de jurisdicción primaria concurrente, el tribunal habrá de determinar si la acción debe ser iniciada ante la agencia concernida o ante el foro judicial. Asoc. Pescadores Pta. Figueras, 2002 J.T.S. 4, a la pág. 581; Mun. de Caguas v. A.T. & T., Op. de 18 de junio de 2001, 2001 J.T.S. 96, a la pág. 1467; Delgado Rodríguez, 121 D.P.R., a la pág. 354.
Contrario a la doctrina de jurisdicción primaria, cuyo fin es determinar si el organismo administrativo o el tribunal tiene la jurisdicción original para considerar la reclamación, la doctrina de agotamiento de remedios se refiere a cuándo es el momento apropiado para que los tribunales intervengan en una controversia previamente sometida ante la atención de una agencia administrativa. Mun. de Caguas, 2001 J.T.S. 96, a la pág. 1467.
Creada en respuesta a las necesidades de competencia administrativa y de orden en los procedimientos, la doctrina de agotar los remedios administrativos se basa en la fundamental premisa de que "nadie tiene derecho a auxilio judicial por un daño supuesto o inminente hasta haber agotado el remedio administrativo prescrito". Guzmán y otros, 2002 J.T.S. 65, a la pág. 1062; Mercado Vega v. U.P.R., 128 D.P.R. 273, 282 (1991). Así *1125 pues, el Tribunal Supremo ha señalado que esta norma, que constituye un requisito jurisdiccional, "procura que cuando una parte desea obtener un remedio en una agencia, dicha parte tiene el deber de utilizar todas las vías administrativas a su alcance para ello antes de recurrir al foro judicial". Guzmán y otros, 2002 J.T.S. 65, a la pág. 1062; Asoc. Pescadores Pta. Figueras, 2002 J.T.S. 4, a la pág. 529; Mun. de Caguas, 2001 J.T.S. 96, a la pág. 1467. Es decir, como norma general, solamente cuando la parte afectada haya concluido los procedimientos administrativos es que tendrá acceso al foro judicial. Guzmán y otros, 2002 J.T.S. 65, a la pág. 1062.
En consideración a lo anterior, por ser la doctrina de agotamiento de remedios una norma de abstención judicial, los tribunales han de inhibirse de intervenir en un procedimiento administrativo hasta que concluyan los trámites en la agencia correspondiente. Guzmán y otros, 2002 J.T.S. 65, a la pág. 1063; Asoc. Pescadores Pta. Figueras, 2002 J.T.S. 4, a la pág. 579; Igartúa de la Rosa v. A.D.T., 147 D.P.R. 318, 331 (1998). Esta norma ha sido adoptada en nuestro ordenamiento jurídico a través de la sección 4.2 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme (la "LPAU"), 3 L.P.R.A. § 2172. Sin embargo, aunque en limitadas excepciones, puede ser preterido el agotar todos los remedios provistos por una agencia. Así pues, la sección 4.3 de la LPAU, 3 L.P.R.A. § 2173, dispone que:

“El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y én el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. ”

Véase además: Guzmán y otros, 2002 J.T.S. 65, a la pág. 1063; Asoc. Pescadores Pta. Figueras, 2002 J.T. S. 4, a la pág. 580; Igartúa de la Rosa, 147 D.P.R., a la pág. 332.
Expuesto el derecho aplicable a la controversia ante nos, procedemos a resolver.

pmd

En el caso de autos, los planteamientos de error primero, segundo, cuarto y quinto están íntimamente relacionados, por lo que procedemos a discutirlos de forma conjunta. Mediante dichos señalamientos, la parte peticionaria arguye que erró el TPI al usurpar la jurisdicción exclusiva de ARPE y dejar de aplicar la doctrina de agotamiento de remedios administrativos, pues el procedimiento de injuction contemplado en el Artículo 28 de la Ley Núm. 76 no es el procedimiento apropiado para decretar la violación de las leyes y los reglamentos encomendados a la agencia. No le asiste la razón.
Al aprobarse la Ley Núm. 76, el poder legislativo transfirió a ARPE las funciones de la Junta de Planificación y la facultad de velar por el cumplimiento de los reglamentos que gobiernan la construcción y el uso de terrenos en Puerto Rico. Conforme lo anterior, aún cuando la Junta de Planificación es el organismo creado por ley para llevar a cabo la labor de planificar, zonificar, y establecer el uso de las distintas áreas del país, le corresponde a ARPE el aplicar y velar por el cumplimiento de sus reglamentos; por ejemplo, el Reglamento de Planificación Núm. 4, de 5 de noviembre de 2000, cuyo propósito es guiar el uso, propósito, construcción y desarrollo de los terrenos y edificios para asegurar el bienestar general de los actuales y futuros adquirentes. Asoc. Pro Bienestar Vecinos Urbanización Juan B. Juyke Inc. v. Banco Santander de Puerto Rico, Op. 28 de junio de 2002, 2002 J.T.S. 104, a la pág. 1467-1468; T-JAC, Inc. v. Caguas Centrum, 148 D.P.R. 70, 81 (1999); Negrón v. Junta, 139 D.P.R. 191, 194-195 (1995); Asoc. C.D. Octubre v. J.A.C.L., 116 D.P.R. 326 (1985).
*1126 Del Art. 28 de la Ley Núm. 76, surge de manera clara y libre de ambigüedades que ARPE tiene la facultad para instar recursos ante el foro judicial para impedir las violaciones de las leyes y reglamentos que regulan la construcción y uso de edificios en Puerto Rico. Así pues, la citada ley dispone que:

“El Administrador o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina, que resultare o pudiera resultar especialmente perjudicado por cualesquiera de dichas violaciones, además, de los otros remedios provistos por ley, podrá entablar recurso de interdicto, mandamus, nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de este Capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración."

En el caso de autos, la parte peticionaria aduce que incidió el foro sentenciador al declarar No Ha Lugar su Solicitud de Relevo de Resolución de 23 de Diciembre de 2003, Notificada el 30 de Diciembre de 2003, pues el TPI carecía de jurisdicción sobre materias, tales como reglamentación y planificación, las cuales atañen exclusivamente a ARPE.
Como se ha hecho referencia, en el descargo de su responsabilidad, ARPE y al amparo del procedimiento especial tipificado en el Art. 28 de la Ley Número 76, radicó Demanda sobre injunction contra los peticionarios, por la cual solicitó al TPI que ordenase a éstos a: 1) desistir de usar o mantener determinados usos para los que no poseían permiso de uso; 2) remover, demoler o eliminar por su cuenta y riesgo las obras y estructuras descritas, para las que no tenían permiso de construcción. Es decir, la única controversia ante el TPI fue determinar la existencia o inexistencia de los permisos de uso y de construcción descritos en las alegaciones contempladas en la Demanda.
Conforme a lo anterior, la controversia presente en el caso de autos no es una de jurisdicción primaria exclusiva, pues la intervención del TPI está contemplada en nuestro ordenamiento legal por la Ley Num. 76. Además, tampoco es una de jurisdicción concurrente, ya que la controversia a dilucidarse, la existencia de los permisos, no requería el ejercicio de la discreción administrativa o la aplicación del conocimiento especializado de ARPE, máxime cuando los peticionarios aceptaron todas las alegaciones de la Demanda y se allanaron en tres ocasiones a las imputaciones de desacato. De otra parte, no habiendo sido sometido previamente el asunto ante la intervención administrativa, es improcedente la aplicación de la doctrina de agotamiento de remedios administrativos.
En consideración a lo anterior, no erró el TPI al intervenir, dictar órdenes y, en consecuencia, velar por su cumplimiento mediante el procedimiento de desacato, pues su proceder en el caso de autos responde a las disposiciones de la Ley Núm. 76.
Dado que el tercer planteamiento del peticionario depende de la validez de la intervención del TPI, la cual ha sido demostrada, se hace innecesario discutir los méritos de la Resolución de 23 de diciembre de 2003, notificada el 30 de ese mes y año. Veamos.
El Artículo 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, dispone que el Tribunal de Apelaciones conocerá mediante auto de certiorari expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia. Por su parte, la Regla 32 (D) del Reglamento del Tribunal de Apelaciones, aprobado el 21 de julio de 2004, 2004 J.T.S. 112, dispone, en lo pertinente, que el recurso de certiorari para revisar cualquier otra orden del Tribunal de Primera Instancia, se formalizará mediante la presentación de una solicitud dentro de los treinta (30) días siguientes a la fecha del archivo en autos de copia de la notificación de la orden recurrida, término que es de cumplimiento estricto. Por otro lado, la Regla 53.1 (e)(1) de las de Procedimiento Civil, 32 L.P.R.A. *1127 Ap. Ill, R. 53.1(e)(1), dispone que el recurso de certiorari para revisar cualquier orden del Tribunal de Primera Instancia se formalizará presentando una solicitud dentro de los treinta (30) días siguientes a la fecha de notificación de la orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando mediaren circunstancias especiales debidamente sustentadas en la solicitud de certiorari.
Los términos dispuestos por las reglas procesales existen para que las partes y el tribunal actúen en determinado plazo. Al limitar la discreción de todos los participantes en cuanto a su conducta procesal se promueve el desarrollo gradual y ordenado del proceso judicial desde su inicio hasta su terminación. Hiram A. Sánchez Martínez, Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo, Ed. Lexis-Nexis de Puerto Rico, Inc., Hato Rey, 2001, pág. 59.
Conforme a la doctrina a que se ha hecho referencia, los peticionarios, parte adversamente afectada por la Resolución de 23 de diciembre de 2003, disponían del plazo de estricto cumplimiento de treinta (30) días, contados desde el 30 de diciembre de 2003, fecha de la notificación de la Orden, para presentar ante nos su recurso de certiorari. Este término prescribió el 29 de enero de 2004, por lo que el recurso resulta tardío para revisar esta actuación.
En Martínez, Inc. v. Abijoe Realty Corp., 151 D.P.R. 1, 7 (2000), citando a Colón Morales v. Rivera Morales, 146 D.P.R. 930, 936 (1998), nuestro más alto foro reiteró que los requisitos de cumplimiento estricto pueden eximirse por causa justificada oportunamente invocada. La demora de la peticionaria para interponer su recurso de certiorari, según lo prescrito por la citada doctrina, no ha sido justificada, por lo que nuestra intervención en este momento sería una inoportuna.
IV
Por los fundamentos anteriormente expuestos, denegamos el auto de certiorari.
Así lo acordó el Tribunal y lo certifica la Secretaria Interina del Tribunal de Apelaciones.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones